## A00A0595. PUTNAM v. THE STATE.
(537 SE2d 384)

POPE, Presiding Judge.

Jon Putnam appeals the denial of his motion for discharge and acquittal based upon double jeopardy grounds. Because we conclude that the trial court had discretion to grant a mistrial under the circumstances, we find that Putnam's plea in bar was properly denied.

This is the second appearance of this case in this court. In *Putnam v. State*, 231 Ga. App. 190 (498 SE2d 340) (1998) (physical precedent only), we reversed Putnam's convictions for child molestation and aggravated child molestation. Putnam's retrial commenced in November 1998, a jury was selected and sworn, and evidence was presented. A question arose regarding the admissibility of certain evidence objected to by the defense. The trial court declined to rule on the question immediately, taking it under advisement and declaring a recess until the next morning.[1]

---

[10] *Williams v. Natalie Townhouses &c.*, 182 Ga. App. 815, 817 (357 SE2d 156) (1987).
[1] Although the defense motion and the trial court's order allude to the trial judge instructing the jurors before excusing them for the recess that they should disregard any media coverage of the trial, no such instruction appears in the record.

The next morning, a news story about the case appeared in the local newspaper. Upon the arrival of counsel at court, they were directed by courtroom bailiffs to meet with the trial judge in chambers. The meeting was not recorded, but the parties agree that the trial judge informed both counsel that it was his opinion that a mistrial was necessary because of the newspaper article. When all parties returned to the courtroom, the district attorney stated for the record what had transpired in chambers. Defense counsel then objected on the record to the mistrial, and the trial court excused the jury after informing them that a mistrial had been declared. That same day, Putnam filed a motion for discharge and acquittal, which was amended the next day. This appeal followed the trial court's denial of Putnam's motion.

Putnam contends the trial court erred in denying his motion for discharge and acquittal because no manifest necessity existed for declaring a mistrial. One may not be prosecuted for offenses for which one was tried in a former prosecution if the former prosecution was "[t]erminated improperly after the jury was impaneled and sworn." OCGA § 16-1-8 (a) (2). "A trial is improperly terminated if there was no manifest necessity for declaring a mistrial. Manifest necessity exists only under urgent circumstances." (Citations and punctuation omitted.) *Jefferson v. State*, 224 Ga. App. 8, 9 (479 SE2d 406) (1996).

In this case, it is undisputed that jeopardy had attached. The only question is whether a "manifest necessity" existed for declaring the mistrial. "[T]he existence of manifest necessity is to be determined by weighing the defendant's right to have his trial completed before the particular tribunal against the interest of the public in having fair trials designed to end in just judgments." (Citation and punctuation omitted.) *Stevens v. State*, 215 Ga. App. 718, 719 (1) (452 SE2d 176) (1994).

The United States Supreme Court in *Arizona v. Washington*, 434 U. S. 497 (98 SC 824, 54 LE2d 717) (1978), held that a trial court's judgment about whether there was manifest necessity to grant a mistrial is entitled to great deference. Although the Georgia statutory protection against double jeopardy found in OCGA § 16-1-8 affords an accused more protection than the minimum standards contained in the United States and Georgia Constitutions,[2] we also have held that, in connection with OCGA § 16-1-8, the trial court's decision to grant a mistrial and reject lesser alternatives is entitled to great deference. *Terrell v. State*, 236 Ga. App. 163, 165 (511 SE2d 555) (1999);

---

[2] *Marchman v. State*, 234 Ga. 40 (215 SE2d 467) (1975) (construing former Ga. Code Ann. §§ 26-506; 26-507); *State v. Estevez*, 232 Ga. 316 (1) (206 SE2d 475) (1974) (same); *State v. LeMay*, 186 Ga. App. 146 (1) (367 SE2d 61) (1988).

*Cooke v. State*, 230 Ga. App. 326, 328-329 (496 SE2d 337) (1998). "Deference to the judge's sound discretion also precludes a reviewing court from assuming, in the absence of record evidence, that the trial judge deprived a defendant of constitutional rights." (Citations and punctuation omitted.) *Burleson v. State*, 259 Ga. 498, 501 (384 SE2d 659) (1989).

"Manifest necessity can exist for reasons deemed compelling by the trial court, especially where the ends of substantial justice cannot be attained without discontinuing the trial." (Citations and punctuation omitted.) *Pleas v. State*, 268 Ga. 889, 890 (2) (495 SE2d 4) (1998). "A trial judge has acted within his sound discretion in rejecting possible alternatives and in granting a mistrial, if reasonable judges could differ about the proper disposition, even though in a strict, literal sense, the mistrial is not necessary." (Citations and punctuation omitted.) *Cooke*, 230 Ga. App. at 329.

Further, it is not dispositive that the trial court made the decision sua sponte. See, e.g., *Terrell*, 236 Ga. App. at 166. And, "the availability of another alternative does not without more render a mistrial order an abuse of sound discretion." (Citations and punctuation omitted.) *Burleson*, 259 Ga. at 501.

Finally, it is true that the defendant has a valuable right to be tried by the original impaneled jury. But that right is not paramount to the state's equal right to a fair trial.

> Both the defendant and the state are entitled to a fair trial designed to end in a just judgment. [Cit.] The trial court has the duty to ensure a fair trial to all parties in a case. The trial court is vested with as much authority to grant a mistrial when an injustice occurs to the state as when it occurs to the defendant. [Cit.]

*Terrell*, 236 Ga. App. at 166.

The mistrial decision must be based on the surrounding circumstances in their totality. *Cooke*, 230 Ga. App. at 327. Although the better practice in the circumstances presented here would have been to question the jury about its media exposure, see *Deal v. State*, 233 Ga. App. 79, 81 (4) (503 SE2d 288) (1998) and cases cited therein, the trial judge was in the best position to determine the possible prejudicial impact of the newspaper article in connection with the setting in which the trial was taking place. Further, no prosecutorial misconduct is involved, "and this is a significant factor for appellate consideration." *Cooke*, 230 Ga. App. at 328.

Although the trial judge should also explain on the record that he or she considered and rejected alternative remedies, the fact that the lower court failed to do so here "does not, standing alone, render

[his] determination so unwarranted as to preclude the defendant's retrial on grounds of former jeopardy." *Terrell*, 236 Ga. App. at 165. *Dotson v. State*, 213 Ga. App. 7 (1) (443 SE2d 650) (1994), is distinguishable because there, "[t]he trial court gave appellant no opportunity before declaring mistrial either to object thereto or to present an argument as to the appropriate means of correcting the testimonial error." Here, Putnam's counsel had the opportunity to propose alternatives both in chambers and in court when he was invited to comment on the mistrial. There is no record of the in-chambers discussion between the trial judge and counsel. Thus, we do not know whether the court considered alternatives to mistrial. But even if the court failed to consider alternatives, such a failure "is more likely to bar retrial in cases involving prosecutorial abuse" than juror bias. *Wilson v. State*, 217 Ga. App. 544, 545 (458 SE2d 486) (1995).

Under the totality of the circumstances the trial court did not err in denying the motion for discharge and acquittal.

*Judgment affirmed. Andrews, P. J., Blackburn, P. J., Miller and Ellington, JJ., concur. Smith, P. J., and Ruffin, J., dissent.*

Smith, Presiding Judge, dissenting.

I must respectfully dissent because I conclude that no manifest necessity existed for a mistrial in this case. The trial court granted the mistrial sua sponte, in chambers, off the record, over Putnam's objection, and without first determining whether the jury had been tainted. Absent such manifest necessity, Putnam's plea in bar should have been granted.

One may not be prosecuted for offenses for which that person was tried in a former prosecution if the former prosecution was "[t]erminated improperly after the jury was impaneled and sworn." OCGA § 16-1-8 (a) (2). "A trial is improperly terminated if there was no manifest necessity for declaring a mistrial. Manifest necessity exists only under urgent circumstances." (Citations and punctuation omitted.) *Jefferson v. State*, 224 Ga. App. 8, 9 (479 SE2d 406) (1996).

> [T]he existence of manifest necessity is to be determined by weighing the defendant's right to have his trial completed before the particular tribunal against the interest of the public in having fair trials designed to end in just judgments; and the decision must take into consideration all the surrounding circumstances.

(Citation and punctuation omitted.) *Stevens v. State*, 215 Ga. App. 718, 719 (1) (452 SE2d 176) (1994). Although a trial court has a broad discretion in granting a mistrial, this power is subject to "stringent limitations." *Dotson v. State*, 213 Ga. App. 7, 8 (1) (443 SE2d 650) (1994). Because declaring a mistrial over a defendant's objection has severe consequences, a trial court must "give careful, deliberate, and

studious consideration to whether the circumstances demand a mistrial, with a keen eye toward other, less drastic, alternatives, calling for a recess if necessary and feasible to guard against hasty mistakes." (Citation omitted.) *Smith v. State*, 263 Ga. 782, 783 (1) (439 SE2d 483) (1994).

"Manifest necessity" may exist even when there are less drastic alternatives, "so long as the record discloses that the trial court considered alternatives before declaring mistrial." (Citation, punctuation and emphasis omitted.) *Dotson*, supra.

Here, the record does not disclose this careful consideration. No record was made of the discussion in chambers, and we cannot assume harm. The record made by the prosecutor after the return of counsel and the trial judge to the courtroom shows only that the judge indicated to counsel in chambers that he was *assuming* that the "information having been published in this morning's paper would have come to the knowledge of one or more jurors." The trial court did not poll the jurors or ask the group whether any of them had read the article or even seen the newspaper. Particularly given that defense counsel and the trial court suggest that the jurors were instructed to disregard any media coverage of the trial,[3] we cannot assume that any of the jurors even saw the item.

Even if one or more jurors did see the article, in my view, we cannot assume that it would have precluded a fair trial. The newspaper story, which was placed into evidence, began with a statement that "[a] former Augusta resident unfairly convicted of child molestation two years ago, according to an appeals court, is standing trial again on the charges." The trial court's order characterizes this statement, among others, as "highly prejudicial." But the article states clearly and accurately that this court ruled that "certain testimony and evidence shouldn't have been given to the jury in his first trial and was unfairly prejudicial." Moreover, although the article recites that the evidence at the first trial was "not overwhelming," that statement was clearly attributed to this court, and it was balanced by also reporting our ruling that the victim's testimony alone was sufficient to support the conviction. Even the trial court acknowledged that the article did not give one side an unfair advantage, reciting that it was "highly prejudicial to both parties."

The trial court certainly could have determined whether any jurors had seen the newspaper item. If so, the trial court then could have determined whether any jurors had formed an opinion with regard to guilt or innocence based upon the article and finally could have determined whether instructing the jurors to disregard the arti-

---

[3] Notwithstanding this suggestion, no such instruction appears in the record.

cle would have allowed them to consider fairly the evidence introduced in the present trial. See generally *Stevens, supra* at 719-720 (1) (no manifest necessity for declaring mistrial because "curative instructions might have been sufficient to undo any possible harm"). The trial court in its order, relying on *Abdi v. Georgia*, 744 F2d 1500 (11th Cir. 1984), recites that "[d]efense counsel not only failed to express an alternative to a mistrial, but indicated that it was naive to believe that jurors were not exposed, at least indirectly, to the offensive newspaper report." I do not find *Abdi* either applicable or persuasive.

In *Abdi* the Eleventh Circuit held that the trial court's speed in reaching a decision that a mistrial was necessary did "not indicate an abrupt or precipitous decision that failed to consider the alternatives seriously enough." Id. at 1504. But unlike this case, in *Abdi* the necessity for a mistrial was caused by the egregious conduct of defense counsel in questioning the victim of a rape about her prior sexual conduct, in violation of Georgia's Rape Shield Law, OCGA § 24-2-3. The record here reveals no misconduct on the part of counsel. In my view, it does not reveal the manifest necessity required for declaring a mistrial over the defendant's objection. I am persuaded that having failed to explore alternative remedies before declaring a mistrial, the trial court should have granted Putnam's plea in bar.

I am authorized to state that Judge Ruffin joins in this dissent.

DECIDED JULY 13, 2000 ▮

*Peter D. Johnson*, for appellant.
*Daniel J. Craig, District Attorney, Charles R. Sheppard, Assistant District Attorney*, for appellee.